UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAN GLOBAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALCHEMY TELCO SOLUTIONS US, LLC, <br><br> Defendant. | Case No: 1:22-cv-11732-AK <br><br> (Related to: 1:22-cv-11763-AK) |

**ALCHEMY TELCO SOLUTIONS US, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF FINAL JUDGMENT INCLUDING ATTORNEYS' FEES AND COSTS**

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ................................................................................................................. 1

    A. The Parties and Their Master Purchase Agreement ....................................................... 1

    B. Lan's Breach of the MPA ................................................................................................ 2

    C. Alchemy's Defense to Lan's Meritless Claims and Dilatory Tactics ............................ 3

        1. Lan's Meritless Claims ................................................................................................ 3

        2. Lan's Improper Jury Demand ..................................................................................... 4

        3. Improper "Expert" Opinions ...................................................................................... 5

        4. Lan's Strategy of Delay ............................................................................................... 6

III. ARGUMENT ...................................................................................................................... 7

    A. Alchemy Is Entitled to Recover its Attorneys' Fees Under the Lodestar
        Method ............................................................................................................................. 7

    B. Counsel's Rates Are Reasonable .................................................................................... 8

    C. The Time Counsel Spent Litigating the Case Is Reasonable ...................................... 12

    D. Alchemy Is Entitled to Recover Its Costs .................................................................... 13

CONCLUSION ......................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Alston v. Town of Brookline, Massachusetts*,
  No. CV 15-13987-GAO, 2019 WL 117605 (D. Mass. Jan. 7, 2019) ...................................... 11

*BioPoint, Inc. v. Dickhaut*,
  No. CV 20-10118-RGS, 2023 WL 4471971 (D. Mass. July 11, 2023) .................................. 14

*Blum v. Stenson*,
  465 U.S. 886 (1984) ................................................................................................................ 11

*Cent. Pension Fund of the Int'l Union of Operating Engineers & Participating Emps. v. Ray Haluch Gravel Co.*,
  745 F.3d 1 (1st Cir. 2014) ....................................................................................................... 17

*Kelly v. Riverside Partners, LLC*,
  397 F. Supp. 3d 75 (D. Mass. 2019) ....................................................................................... 14

*Matalon v. Hynnes*,
  806 F.3d 627 (1st Cir. 2015) ................................................................................................... 11

*Sanderson-Macleod, Inc. v. Hobbs Med., Inc.*,
  No. CV 19-30013-MGM, 2020 WL 2188872 (D. Mass. May 6, 2020) ............................. 16, 17

*Themis Cap. v. Democratic Republic of Congo*,
  No. 09 CIV. 1652 PAE, 2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) ................................... 14

*Vista Outdoor Inc. v. Reeves Fam. Tr.*,
  No. 16 CIV. 5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018) ........................................... 15

**RULES**

F.R.C.P 26 .................................................................................................................................... 16

I.       INTRODUCTION

For more than two years, Alchemy Telco Solutions US, LLC ("Alchemy") has been forced to defend against Lan Global's ("Lan") fanciful claims that, *inter alia*, Alchemy committed deliberate fraud or was unjustly enriched as a result of its performance of the Parties' Master Purchase Agreement ("MPA"). The majority of these claims were dismissed as implausibly pleaded. The remaining counts (which were not the subject of Alchemy's Motion to Dismiss) were then the subject of extensive party, third-party, and expert discovery, all of which culminated in summary judgment in Alchemy's favor after this Court held that Lan's claims were legally deficient and/or unsupported by any competent evidence. The net result of all of this is that Alchemy has been forced to incur substantial fees and costs over a multi-year period defending against claims that had no merit or support, and which never should have been brought in the first place. As the Court correctly found, the MPA's attorneys' fees provision applies with full force here, and entitles Alchemy to an award of fees and costs in its favor. As set forth below, the Court should award Alchemy the full amount of fees and costs it incurred in defending against Lan's claims, and should enter final judgment in Alchemy's favor accordingly.

II.      BACKGROUND[1]

A.       The Parties and The Master Purchase Agreement

Alchemy is a global leader in the secondary and circular technology market. It sources a variety of pre-owned consumer electronic devices (*e.g.,* cell phones) through auctions, upgrade programs, and open market purchases, which it supplies to third Parties for retail sales. Lan

---

[1] The Court has previously set forth the background regarding the parties and their business dealings (*see* Doc Nos. 42, 59, 130, and 140). Alchemy accordingly provides only a brief recitation of the relevant facts here.

purchases consumer electronic devices, such as Apple iPhones, which it refurbishes and sells to consumers. (*See* Doc Nos. 130 at 1; 140 at 1.)

After several weeks of negotiations, Alchemy and Lan executed a Master Purchase Agreement (hereinafter "the Agreement" or "MPA") on January 5, 2022. (Doc No. 85-13.) The same day that the Parties executed the MPA, Lan executed Order Form No. 1, wherein it committed to purchase a minimum of 3,500 iPhone 8 devices per week for a period of 13 weeks at a per unit price of $135. (Doc No. 130 at 7.) It further committed to purchase a minimum of 3,000 iPhone 8 Plus devices per week for the same 13-week period at a per unit price of $205. (*Id.*). Several weeks later, on January 31, 2022, Lan executed Order Form No. 2, and placed an additional purchase order for a minimum of 3,500 iPhone XR smartphones per week for a 13-week period commencing March 15, 2022, at a per unit price of $225. (*Id.*) All told, Lan committed to purchase more than $25 million worth of iPhones over a period of approximately five months.  Upon executing the MPA, Alchemy immediately began sourcing iPhones for Lan.

B.   **Lan's Breach of the MPA**

Just over a month after it executed its second purchase order, Lan was short on payments and long on excuses. With each passing month came a new reason why Lan could not make payments to Alchemy. (*See* Doc No. 83 at 5.) When Alchemy told Lan it would need to find alternative buyers for the tens of thousands of devices Alchemy had sourced on Lan's behalf, Lan assured Alchemy that it would pay for and take possession of the devices. (*See* Docs No. 29 at 5; 130 at 8.) By June, Lan had still not paid for the tens of thousands of devices it had ordered, and owed Alchemy millions of dollars. (*See* Doc No. 130 at 9.)  When it ultimately became clear that Lan either could not or would not perform under the MPA, Alchemy went to great lengths to sell more than 100,000 iPhones it had purchased for Lan to alternate buyers. (*See* Doc Nos. 130

at 24; 140 at 8.) Despite those extensive efforts, Alchemy ultimately resold the devices to other buyers at prices below the contract prices agreed to in the MPA and Order Forms. On July 20, 2022, Alchemy served its first demand for indemnity under the MPA, which was updated in subsequent indemnity demands as the extent of Alchemy's losses increased. (*See* Doc No. 130 at 10.)

Lan responded to that demand by claiming that it wanted to find a resolution and to make things right with Alchemy. (*See* Doc No. 83 at 6.) During the summer and into the fall of 2022, Lan and its representatives tried to entreat Alchemy to set aside its contractual losses and instead enter into yet another agreement with Lan. (*See* Doc No. 130 at 10.) When it became clear that Alchemy had no interest in this proposal, Lan quickly filed suit, asserting claims of fraud, unjust enrichment, and promissory estoppel that it had never previously mentioned—let alone supported—in the Parties' months-long dialogue regarding Lan's material contractual breaches.

### C. Alchemy's Defense to Lan's Meritless Claims and Dilatory Tactics

The record in this case demonstrates that Lan's true goal has been to use litigation not to achieve a just end, but rather to delay justice to the maximum extent possible. Below are but a few examples of Lan's efforts to strategically delay the inevitable, while burdening the Court with unmerited claims, motions, and tactics, all of which had the effect of needlessly driving up Alchemy's fees and costs.

#### 1. Lan's Meritless Claims

Lan filed its First Amended Complaint ("FAC") alleging five common law claims related to the negotiated MPA, including fraudulent inducement, negligent misrepresentation, unjust enrichment, promissory estoppel, and breach of the implied covenant. (*See generally* FAC, Doc No. 5.) Alchemy went to great lengths to explain to Lan in numerous written and oral meet and

confer sessions that these causes of action were deficiently pleaded and precluded as a matter of law by the integration clause and disclaimers of reliance in the MPA. Notwithstanding those efforts, Lan refused to revise or withdraw its claims, forcing Alchemy to move to dismiss them. (Doc No. 28.) Even after the Court recommended allowing that motion (Doc No. 42 at 30), Lan objected to that Order (Doc No. 47), thereby burdening this Court with unmerited objections and requiring Alchemy to incur additional expense to respond to those objections.

In the end, this Court overruled all of Lan's objections in their entirety, but not before Lan succeeded in imposing months of additional delay, and forcing Alchemy to bear substantial additional expense. In total, Lan's litigation choices regarding the pleading of its claims necessitated some ten months of litigation before the pleadings were settled. (*Compare* Complaint filing date (October 12, 2022, Doc No. 1) *with* Order Adopting R&R (August 25, 2023, Doc No. 59.).)

### 2. Lan's Improper Jury Demand

In no uncertain terms, Lan waived its right to a jury trial when it executed the MPA:

> THE PARTIES HEREBY WAIVE THEIR RIGHT TO TRIAL BY JURY IN ANY LEGAL ACTION RELATED TO THIS AGREEMENT AND AGREE AND ACKNOWLEGE THAT ALCHEMY HAS NOT REPRESENTED THEY WILL NOT ENFORCE THIS PROVISION.

(MPA § 16, Doc No. 31, at 9 (capitalization in original).)

This broad waiver of the right to a trial by jury "***in any action related to this [A]greement***" is the only provision in the entire agreement drafted in all capital letters. Alchemy also raised this to Lan as part of the meet-and-confer process, yet Lan declined to withdraw its demand notwithstanding the clear waiver, forcing Alchemy to undertake a separate motion to strike. (Doc No. 29.) Making matters worse, Lan ignored the overwhelming number of cases

4

from this Circuit and opted instead to pursue a "crabbed interpretation" of the agreement that the Court held was "contrary to the plainly broad language of the waiver." (Doc No. 43 at 4 fn. 3.) Judge Levenson ultimately found that "[a]ll of these [claims]"—except for Lan's promissory estoppel claim—"directly relate to the written contact and fall well within the broad language of the jury waiver." (Doc No. 43 at 4.)

### 3. Improper "Expert" Opinions

By the time of expert discovery, it was clear that this case turned on a fundamental disagreement over the Parties' performance (or breach) of a fully-integrated agreement. (Doc No. 42 at 27.) Notwithstanding that fact, Lan sought to bolster its improbable claims for unjust enrichment and breach of the implied covenant by proffering purported "expert" opinions of Zal Phiroz, PhD and John S. Luna.  Yet as the Court found, these opinions lacked "intellectual rigor," and, in certain respects, were not "expert opinion at all." (*See* Doc No. 130 at 35.)  For example, Dr. Phiroz's report largely purported to summarize certain excerpts of the discovery record, then proffered an opinion regarding the supposed "expectations" of the Parties that avoided taking into account the Parties' rights and obligations under the MPA. (Doc No. 130 at 43-44.)  Alchemy was forced to move to exclude such unreliable and improper opinion, and the Court found that Dr. Phiroz (i) did not have "any specialized knowledge about" the issues on which he opined; and (ii) Dr. Phiroz's own account of his approach "underscore[d] the absence of any reliable methodology," and ultimately "[did] nothing to assist the court—whether as interpreter of the law or as finder of fact—in understanding the Parties' contract." (*Id.* at 41, 43.) As for Mr. Luna, his primary opinion was that he had no opinion at all as to Lan's supposed unjust enrichment damages because those had not been quantified in the discovery record, and his secondary opinion was that, had Alchemy sourced more A and B grade devices, it would

have obtained higher prices for those phones in the resale market. (Doc No. 89-2 at 177.) Alchemy was required to move to exclude these unhelpful and inadmissible opinions as well. (Doc No. 88.)

### 4. Lan's Strategy of Delay

The through line underlying Lan's litigation decisions has been to impose delay at all costs. For example, it waited until June 2023—some eight months after filing its complaint—to serve its first discovery requests, a delay it then used to seek a months-long extension of the case schedule just two weeks before the fact discovery cutoff. (*See* Doc No. 50). It also repeatedly challenged Judge Levenson's Reports and Recommendations, despite that Lan never assigned any specific claim of error to anything Judge Levenson had found. Indeed, Lan made no effort to conceal that it was simply seeking another bite at the apple, in many cases by copying and pasting the same unmeritorious arguments from below as a cost-effective way of delaying proceedings and imposing additional costs on Alchemy. (*See* Doc Nos. 35 (Opp. to MTD), 47 (Obj. to R&R on MTD), 95-1 (Opp. to MSJ), 135 (Obj. To R&R on MSJ)).

Lan also pursued discovery of a third party, Apple Inc., that Lan knew represented a critical business relationship for Alchemy, despite the highly speculative and attenuated nature of the materials sought. Those efforts predictably resulted in motions to compel filed in this Court ***and*** in the Central District of California (*see* Doc No. 130 at 4-5; Case No. 2:23-mc-00128 (C.D. Cal.)), and which necessitated further efforts by Alchemy both before and after the fact discovery cutoff. And, in a particularly obvious example, Lan attempted to supplement Mr. Luna's report with new opinions nearly three months after the expert-disclosure deadline, and while Alchemy's dispositive motions were pending. (*See* Doc No. 88 at 4.) In response to Alchemy's well-founded objection, Lan glibly asserted that the Parties could simply re-open discovery and extend the

schedule yet again (*i.e.,* impose more delay) to address any prejudice. (*See* Doc No. 99-1, at 7-9).

All of this is fully consistent with the manner in which Lan's founder, CEO, and sole shareholder, Shawn Mehrian, has approached his business dealings with Alchemy specifically and with his counterparties more generally. Mr. Mehrian and his company have repeatedly been fined, sanctioned, and sued by various governmental, regulatory, and commercial entities for his and their repeated failures to comply with their legal obligations.[2] The extensive delays imposed in this case as a direct result of litigation positions that were factually meritless and legally deficient is just more of the same from Lan Global, and the fees incurred by Alchemy in the course of defending against such legal chicanery are commensurate with the substantial effort required to litigate this case to successful conclusion earlier this year.

## III.   ARGUMENT

### A.   Alchemy Is Entitled to Recover its Attorneys' Fees Under the Lodestar Method

Judge Levenson recommended that this Court dispense with the remainder of Lan's claims and order Lan to pay Alchemy's attorney's fees and costs. *See* Doc No. 130 at 30. This Court agreed. *See* Doc No. 140 at 15-17. The only remaining question is the amount owed to Alchemy.

---

[2] For example, (1) the California Labor Commissioner entered judgment against Lan for its failure to comply with its legal obligation to pay a former executive, *see* Cashman Decl., Ex. 3; (2) Lan apparently failed to comply with its contractual obligation to a shipping vendor to pay tens of thousands of dollars in shipping costs, *see id*. Ex. 4; (3) Lan and Mr. Mehrian have been sued numerous times, including by a former investor for allegedly misrepresenting company financials, *see id*., Ex. 5; (4) Lan and Mr. Mehrian have repeatedly failed to pay taxes, *see id*., Ex. 7; and (5) Mr. Mehrian had his chiropractic license revoked as a result of alleged insurance fraud. *See id*. Ex. 2.

The lodestar approach is the preferred method for calculating fee awards in this Circuit. *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015).

> Under this lodestar approach, a district court first calculate[s] the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are excessive, redundant, or otherwise unnecessary. The court then determines a reasonable hourly rate or rates—a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence. Multiplying the results of these two inquiries yields the lodestar amount. The court may then adjust the potential award based on factors not captured in the lodestar calculation.

*Alston v. Town of Brookline, Massachusetts*, No. CV 15-13987-GAO, 2019 WL 117605, at *3 (D. Mass. Jan. 7, 2019) (citing *Id.*). As set forth below, both the time incurred and the rates charged were reasonable and commensurate with the nature of this matter, the issues that were litigated, the skill and experience of counsel, and the prevailing rates in this market.

### B. Counsel's Rates Are Reasonable

From inception through October 31, 2024 (the most recent date for which billing data is available),[3] Alchemy incurred and paid $504,000 in attorneys' fees in defending against Lan's claims. That amount is reasonable in light of the qualifications of its counsel and the prevailing rates in the market. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("A reasonable hourly rate is typically the prevailing market rate in the "community for similar services by lawyers of reasonably comparable skills, experience, and reputation.").

Alchemy has been represented by two top-tier commercial litigation firms during the duration of this litigation. Alchemy was primarily represented by Singer Cashman LLP through lead counsel, Adam Cashman. Singer Cashman is a trial and litigation firm that was co-founded

---

[3] Alchemy respectfully requests the opportunity to supplement the record with data regarding fees and costs incurred after October 31.

by Mr. Cashman, with a focus on complex commercial and intellectual property litigation. *See* Cashman Decl., ¶ 3.

Mr. Cashman is an experienced trial lawyer with more than two decades of experience litigating a wide spectrum of complex commercial and intellectual property disputes in state and federal courts across the country. Mr. Cashman received his J.D., *cum laude*, from Georgetown University Law Center in 2004, worked as a law clerk to the Hon. Samuel Conti of the U.S. District Court for the Northern District of California, and thereafter worked for more than eight years at the international litigation firm Quinn Emanuel Urquhart & Sullivan, LLP. *See* Cashman Decl., ¶ 7. Among other recognitions, Mr. Cashman has been recognized by Chambers and Partners for his work as an intellectual property litigator; as a "Top Trade Secret Lawyer" for three consecutive years by the Daily Journal; as American Lawyer's Litigator of the Week runner-up for a jury trial victory, and as a "Super Lawyer" for numerous years running. *Id.* ¶ 7. On July 1, 2024, Mr. Cashman joined BraunHagey & Borden LLP ("BHB"), where he continued his representation of Alchemy.

BHB is a leading litigation and trial firm based in San Francisco and New York with substantial expertise in commercial litigation. *See* Cashman Decl., ¶ 2. BHB regularly appears before federal and state courts throughout the country to prosecute and defend claims involving a variety of business issues. *Id.* ¶ 2. The firm's litigators trained at some of the most respected law firms in the world, including Quinn Emanuel Urquhart & Sullivan LLP, Covington & Burling LLP, Morrison & Foerster LLP, Cravath, Swaine & Moore LLP, Skadden Arps Slate Meagher & Flom LLP, Seyfarth Shaw LLP, Orrick Herrington & Sutcliffe, and Paul Weiss LLP, and many of BHB's lawyers are former federal district or appellate court clerks. *Id.* ¶ 2.

9

The rates requested here range from $900 per hour for BHB and Singer's most senior and experienced partners, to $405 per hour for the firms' more junior lawyers. *See* Cashman Decl. ¶ 7. Each attorney's (or other timekeeper's) rate reflects his or her standard billing rate, which is derived from his or her level of seniority and experience. *Id* ¶ 7.

| Name & Title[4] | Billed Hours | Billed Rates | Billed Amount[5] |
|---|---|---|---|
| Adam Cashman, Partner | 258 | Initially $750/hour (Singer Cashman LLP); subsequently $900/hour (BHB) | $194,745.00 |
| Hannah Kramer, Associate | 451.9 | $475/hour | $214,652.50 |
| Evan Budaj, Counsel | 35.7 | $605/hour | $21,598.50 |
| Neil Cave, Counsel | 30.4 | $650/hour | $19,760.00 |
| John T. Rowe, Counsel | 41.2 | $690/hour | 28,428.00 |
| Yesul Pae, Associate, | 11.2 | $405/hour | $4,536.00 |
| Monica Valdivias, Paralegal | 38.1 | $250/hour | $9,525.00 |

---

[4] Mr. Budaj was brought in for the discrete project of drafting Alchemy's Motion to Strike Lan's improper expert opinions, a project that required little or no prior familiarity with the case. Mr. Cave and Ms. Pae provided support with specific legal research issues pertaining to Alchemy's Motion for Summary Judgment, which likewise did not require any case-specific knowledge. Similarly, Mr. Rowe assisted with responding to Lan's objections to Magistrate Judge Levenson's Report and Recommendation related to Alchemy's Motion for Summary Judgment.

[5] The figures provided in this Table and the ultimate Lodestar total only account for Alchemy's fees incurred in defending against Lan's claims, and do not include its fees for its affirmative claims asserted in Case No. 1:22-cv-11763-AK.

| | | | |
|---|---|---|---|
| Dana Ruiz, Paralegal | 29.1 | $250/hour | $7,275.00 |
| Elaine Suen, Paralegal | 17.4 | $200/hour | $3,480.00 |
| **Lodestar/Total Amount Billed Through October 31, 2024[6]** | 913 | | **$504,000.00** |

The backgrounds and experience of these attorneys warrant their billing rates, which are commensurate with the rates for comparable attorneys in premier metropolitan markets like Boston. Indeed, counsel's customary rates are lower than rates approved years ago by courts in this District and elsewhere. *See, e.g.*, *Kelly v. Riverside Partners, LLC*, 397 F. Supp. 3d 75, 95–96 (D. Mass. 2019), *aff'd*, 964 F.3d 107 (1st Cir. 2020) (finding that rates between $950 per hour and $1020 per hour for partners in light "of the education, experience, and ability" of the attorneys and customary market rates for "commercial law firms in the Boston area during this time period"); *BioPoint, Inc. v. Dickhaut*, No. CV 20-10118-RGS, 2023 WL 4471971, at *1–2 (D. Mass. July 11, 2023) (finding that fee petition that included junior and senior partner hourly rates ranging between $741 and $956 for the time period 2019 to 2023 were "appropriate and comparable to, if not lower than, those charged by similar commercial law firms in the Boston area"); *see also Themis Cap. v. Democratic Republic of Congo,* No. 09 CIV. 1652 PAE, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) (noting that, in 2014, "partner billing rates in excess of $1,000 an hour, are by now not uncommon in the context of complex commercial litigation"); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16 CIV. 5766, 2018 WL 3104631, at *6

---

[6] The fees associated with the preparation of this fee petition have been excluded, as they have not yet been invoiced to by Alchemy.

11

(S.D.N.Y. May 24, 2018) (finding that "businesses can and, indeed, regularly pay" rates exceeding $1000 per hour).[7]

### C. The Time Counsel Spent Litigating the Case Is Reasonable

The second part of the lodestar analysis—whether the time spent litigating the case is reasonable—is also readily satisfied here.

By any reasonable measure, this case should have resolved quickly and without extensive litigation. Instead, Lan forced Alchemy to move to dismiss Lan's meritless claims; oppose its objections to the R&R recommending dismissal; prepare for, conduct, and defend multiple party and third-party depositions; identify, locate, collect, review, and produce many thousands of pages of documents; engage in fruitless discovery disputes, including third party discovery of Apple, Inc.; analyze and rebut the dubious analyses performed by Plaintiff's experts; and bring motions for summary judgment and motions to strike improper expert opinion. (Doc Nos. 82, 87.) The number of hours expended by counsel is reasonable, given the length of the litigation (more than two years) and the extensive work required to successfully defend this action through summary judgment. Indeed, Alchemy attempted to minimize its fees by staffing this case leanly from the beginning, whereby more than 75% of the total time was billed by only two people (Adam Cashman and Hannah Kramer).[8] In total, Alchemy is seeking compensation for time

---

[7] Counsel's rates are even more reasonable when compared to other recent benchmarks. For example, in 2020, in *Rimma Vaks v. Tom Quillan, et al.*, 1:18-cv-12571-LTS (Doc No. 128) (D. Mass 2020), counsel provided the court with a compilation of the average hourly rates for AmLaw 100 firms in Boston. The average standard rate for partners in Boston among AmLaw 100 firms in 2020 was $902/hour. *See* Cashman Decl., Ex. 6.

[8] In most instances, there was only one Associate attorney on the case. For example, upon Mr. Cashman joining BHB, associate Kevin Opoku-Gyamfi and paralegals Blaine Dillingham and Dalia Fabius joined the case team to prepare for the forthcoming trial. Their associated fees relate to the filing of this fee petition, which are also recoverable. *See, e.g., Sanderson-Macleod,*

spent by just six attorneys and three paralegals who worked on this matter over the course of more than two years.[9]

### D. Alchemy Is Entitled to Recover Its Costs

Alchemy respectfully requests an award of $27,667.79 in costs incurred to date, which are attributable to discovery vendor fees, document hosting fees, deposition and hearing transcription costs, expert witness costs, delivery and outside printing for chambers copies, lodging, meals, and litigation support vendor fees (among other things). A summary of the costs and expenses is provided below:

| Expense type | Amount |
|---|---|
| Document hosting fees | $ 3,226.37 |
| Transcripts | $ 3,076.07 |
| Other deposition services | $ 12,876.275 |
| Assembly and delivery (Digital One, FedEx, USPS, etc.) | $ 736.38 |
| Filing fees | $ 269.50 |
| Articles cited in expert reports | $ 78.99 |
| Travel expenses to/from fact and expert depositions in Boston and Los Angeles | $ 4,312.205 |
| Expert witness fees under FRCP 26 | $ 2,425.00 |
| Personal service | $ 667.00 |
| **Total** | **$ 27,667.79** |

---

*Inc. v. Hobbs Med., Inc.*, No. CV 19-30013-MGM, 2020 WL 2188872, at *2 (D. Mass. May 6, 2020), report and recommendation adopted, No. CV 19-30013-MGM, 2020 WL 8416011 (D. Mass. May 29, 2020).

[9] The billing records have not been filed as part of this request because they contain substantial attorney-client privileged information, but are available for the Court's review *in camera* upon request.

13

These costs were necessarily and reasonably incurred in the course of defending against Lan's claims, and are substantiated in the accompanying declaration of Alchemy's lead counsel. *See* Cashman Decl., ¶¶ 4–11. They are, moreover, among the types of costs that courts in this District regularly hold are subject to reimbursement. *See, e.g.*, *Cent. Pension Fund of the Int'l Union of Operating Engineers & Participating Emps. v. Ray Haluch Gravel Co.*, 745 F.3d 1, 7 (1st Cir. 2014) ("It is settled beyond hope of contradiction that an attorney's travel time may be reimbursed in a fee award. Similarly, reasonable costs associated with attorney travel may be reimbursed." (internal citations and quotation marks omitted)); *Sanderson-Macleod, Inc. v. Hobbs Med., Inc.*, No. CV 19-30013-MGM, 2020 WL 2188872, at *6 (D. Mass. May 6, 2020), *report and recommendation adopted*, No. CV 19-30013-MGM, 2020 WL 8416011 (D. Mass. May 29, 2020) ("The expenses for which Defendant seeks an award in this case are legal research and discovery document hosting; postage, telephone and internet; and travel from Connecticut to Massachusetts to attend the hearing on Defendant's motion to dismiss. These expenses are of a kind that …appear reasonably and necessarily incurred in this litigation.")

## CONCLUSION

For the foregoing reasons, Alchemy's Motion should be granted, and judgment should be entered in its favor, together with an award of fees and costs as set forth herein.

Dated: November 21, 2024                              Respectfully Submitted,


                                                          */s/ Adam S. Cashman*
                                                         Adam S. Cashman (BBO No. 660683)
                                                         Kevin Opoku-Gyamfi
                                                         BRAUNHAGEY & BORDEN LLP
                                                         747 Front Street, 4th Floor
                                                         San Francisco, CA 94111
                                                         Tel.: (415) 599-0210
                                                         Fax: (415) 276-1808
                                                         cashman@braunhagey.com

                                                         *Attorney for Defendant Alchemy Telco Solutions US, LLC*